JS 44 CAND  (Rev. 12/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jay L. Sellers

**(b)** County of Residence of First Listed Plaintiff _____ Yolo _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

United States, et al

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 3 Federal Question
    *(U.S. Government Not a Party)*

☒ 2  U.S. Government Defendant

☐ 4 Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 790 Other Labor Litigation | | Act |
| | Med. Malpractice | | ☐ 791 Empl. Ret. Inc. | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | Sentence | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 530 General | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | |
| | Other | ☐ 560 Civil Detainee - | (Prisoner Petition) | | |
| | ☐ 448 Education | Conditions of | ☐ 465 Other Immigration | | |
| | | Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION Storrclaim to damager
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

CMI penalties CC section 5a(b) (15t, 7 (a)
JUDGE _____   DOCKET NUMBER _____

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
*(Place an "X" in One Box Only)*   ☐ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE   ☐ EUREKA

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____



1  Jay L. Sellers
2  417 Mace J
3  # 253
4  Davis CA 95618
5

FILED

JAN 17 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

                                              CV12      0295

14   ------------------------------------------------------

15   JAY L. SELLERS,                     CASE #

16        Plaintiff,                                      MEJ

17        V                            CIVIL COMPLAINT

18   UNITED STATES,

19   CITY OF DAVIS,

20   ESPRESSO ROMA CORPORATION,

21   PINE TREE GARDENS

22        Defendants.                   DEMAND FOR JURY

23

24        1.  Plaintiff makes claim against an individual who, acting under color of his or her

25   position with the federal district court in Sacramento, joined others in carrying out a conspiracy

26   that led to the injuries that form the basis of this complaint.  Under California law the United

CIVIL COMPLAINT OF SELLERS V UNITED STATES, ET AL, OF 27,659 CHARACTERS          Page 1

27  States would if a private person be liable to plaintiff for the misconduct of its employees and or

28  officers.  Subject matter jurisdiction comes pursuant to 28 USC section 1346(b)(1).

29      2.  Espresso Roma Corporation is a Berkeley based corporation in Alameda County

30  making venue appear in the Oakland division of the above entitled court.  28 USC section

31  1391(b).

32      3.  This case makes claims under state law but shows causes of action under 18 USC

33  section 1964(c) against Pine Tree gardens, the so called RICO laws, and 42 USC sections

34  1983against each defendant, for due process and equal protection violations under color of state

35  law, and 1985(3) for violations of the provisions relating to conspiracies to obstruct federal

36  judicial processes, the first part of sub division (2) of section 1985 and to deny equal protection

37  of state law out of religious bigotry under sub division (3) of said section 1985.  Said federal

38  civil rights clauses are incorporated in the claims made under state law while the RICO claim

39  cannot now be supported without further evidence relating to criminal activity on behalf of one

40  defendant exploiting another defendant, Espresso Roma Corporation, through criminal activity of

41  those individuals set out below.

42      4.  This action alleges causes under CC sections 1708.7, 51.7 and 52.1 for the repeated

43  malicious infliction of personal injuries for which plaintiff asks for compensative and punitive

44  damages under section 1708.7(c) and under subsections (b) and (b)(1), of section 52 and

45  mandatory penalties and attorney's fees under subsections  (b)(2) and (b)(3) of said section 52,

46  all against (1) United States for the acts of "J. Doe", an unknown individual or individuals of the

47  federal district court sitting in Sacramento,  (2) the City of Davis, (3) Pine Tree Gardens, a

48  private association at 212 I Street, Davis CA 95616, and (4) Espresso Roma Corporation of

49  Berkeley, formerly doing business out of 231 E Street, Davis CA 95616.

50      5.  Defendant City of Davis a city of Yolo County and is named based on the reported

51  actions disclosed in its police case # 04-4146 by its interim police chief on October 4, 2005,

52  officer John Gomez and three other officers and its response by its city attorney to plaintiff's

53  subsequent inquiries to its police department about said case,

54      6.  Pine Tree Gardens, a private mental health facility, is named because of the acts of its

55    directorof operations, Cayce Wallace, a counselor Sandra Coldiron and another counselor,

56    known to plaintiff only as Leigh.  Wallace was its managing agent.

57         7. Espresso Roma Corp of Berkeley is named because of the acts of its E Street Davis

58    manager said Sandra Coldiron, her assistant Andrew, her counter worker Josh and sometime

59    helper said Leigh.  Coldiron was the managing agent at its said Davis branch.

60         8. Not named as defendants are co conspirators Brian Odell and David Young, long time

61    regulars of Café Roma, a male companion purporting to be Leigh's live in boyfriend before Odell

62    at Café Roma on about July 12, 2004, and her male companion when confronting plaintiff in the

63    main lobby of Davidson Library, UCSB campus, Santo Barbara, on about June 10, 2007.

64         9. Other co-conspirators may come to light during the process of discovery.

65         10. Not set out as conspirators were those conspirators of the federal district court of

66    Sacramento who joined in to harass plaintiff in corruptly dismissing or causing the corrupt

67    dismissal of plaintiff's complaint with prejudice thereby precluding plaintiff from asserting his

68    claims in any other authorized court.  On January 3, 2011, an unknown individual or individuals

69    stepped forward to nobly assert that plaintiff's claims dismissal by that court was the result of a

70    fix engendered by or on behalf of said Wallace and Coldiron.  The document plaintiff  had sent

71    during January, 2008, to that court in objecting to the use of falsified evidence does not,

72    according to that court's clerk, appear in that court's records.  When plaintiff pushed to get the

73    judgment vacated or its preclusionary force set aside, the court responded by getting plaintiff

74    blackballed by the circuit court in San Francisco and apparently the rest of the district courts in

75    the 9th circuit.  When next plaintiff did complain about the blackballing to the clerk of the San

76    Francisco court, she apparently put an end to it and cleared the way for plaintiff to make a

77    complaint to the district courts in San Francisco and Seattle.  Previously,  the Sacramento court

78    clerk had begun processing an unsigned complaint of plaintiff to that court and had assigned it to

79    a newly hired magistrate judge to process it in in forma pauperis hearings pending  reception of a

80    needed application therefor.  The scent of a rat wafted through the air and plaintiff ignored that

81    court until its behavior conformed to its rules.  Now with the apparent nudging of the court of

82    appeals and or supreme court all appears in order.   Plaintiff  annexes to this complaint as part of

83    this complaint a copy of a complaint that has been submitted to that court. It is plaintiff's
84    understanding that those who people the entire judicial apparatus that handled his case are
85    immune from civil liability under state law for what gives every appearance of being widespread
86    criminal conduct utterly repulsive to the laws and constitution of the United States as they are
87    written and even after their spirit appears deadened by judicial fiat. This court has jurisdiction of
88    this matter, the parties herein, and venue is properly in this court.

89        11. During late Spring, 2004, Leigh, then an ex baker of Cafe Roma, an employee of
90    Pine Tree Gardens and reigning cafe diva of Café Roma of Davis apparently became smitten
91    with plaintiff and came on very aggressively. Plaintiff, though flattered, rejected what he
92    perceived to be Leigh's sexual offering, began his travels as planned but began writing her in an
93    attempt to establish an artistic liaison based on her own charisma, what he believed was her
94    attraction to him which he believed was caused by a spiritual connectedness which she had
95    misconstrued in purely sexual terms as is the way in this age that wars against religion and art,
96    e.g., the destruction of Puccini's "Madama Butterfly" in a PBS "production" on Xmas, 2011.
97    Plaintiff, a student of ancient poetry and ancient paganism, entertained the belief that through his
98    own poetry he could salvage Leigh's soul and bring her to the height of religious salvation. The
99    annexed poem, part of this complaint, is the initial offering sent Leigh from Hawaii during early
100   spring, 2005. It shows at once the power generated through him by Moisa (the muse), the
101   "platonic" nature of his aspirations and the innocence or perhaps the naivety of his religious
102   ideals.

103       12. Leigh apparently had something else, something non religious, in mind. She sought
104   or was offered, according to alleged co conspirator Odell, police help in tracking down plaintiff,
105   was able to put plaintiff's name to his face, made what was reported as her complaint to get
106   police help. It is said that she justified her action because she had come to believe that plaintiff
107   was using ancient occult powers to suck her into his life. 04-4146 reports that Leigh initially
108   complained about getting letters from a man she didn't know by name or sight, that Officer John
109   Gomez went by a Michele Pin's home in looking for plaintiff, then by the home of two local
110   politician, a Cass Sylvia and a Craig Reynolds, but set the case aside after pretending to
111   determine that plaintiff was in Santa Barbara, that, further, on March 28, 2005, said Coldiron
112   received a package for Leigh from plaintiff, pretended to be frightened, called the police who

113   opened it and found a mock imaginative explanation of why plaintiff went to Hawaii instead of

114   the mountains of Thrace to find Orpheus, the mythic bard. According to Odell on September 17,

115   2005, Leigh was very familiar with plaintiff.  The report is not clear about whether Coldiron had

116   a copy of plaintiff's state ID photo which she was presumably using to ask others of Cafe Roma

117   to try to identify the purported criminal sexual predator, innocent plaintiff who in fact had been a

118   longtime regular of Cafe Roma for about a decade before Coldiron became its manager and had

119   been subjected to Coldiron's hostility for reasons plaintiff could never understand, it being

120   almost as if Coldiron and her daughter, a worker for Cafe Roma, had entertained the belief that

121   plaintiff was eyeing them much as a sexual predator would eye his next victim when in fact he

122   was present when Coldiron brought her then toddler daughter to the neighboring "Jack in the

123   Box" for a treat and became charmed by the unfolding mother-daughter scene which he had

124   carried in his memory so as to carry a soft place in his heart for both.          .

125        13. Lastly, 04-4146 disclosed that Leigh had made two other complaints against plaintiff

126   as the stranger who in fact had become convinced the diva, lost in the tangles of his inadvertent

127   snares, had continuously been sending her mail. The copy of the case record, duly redacted and

128   corruptly edited as apparently is the police way, further shows that Coldiron and Leigh had been

129   told to falsify material information so as to permit a legitimate police investigation or that Leigh

130   had been so self assured at plaintiff's inability to move the authorities to prosecute either on

131   account of his social status or both for making false police reports, normally a prosecutable crime

132   in this state, though, in the wisdom of the judicial system that rules in this state, not one to which

133   civil liability is attached.  Discovery will show whether the fix had long been in to protect, e.g.,

134   Coldiron and hers in such an eventuality relating to sex predators in a college town or whether

135   Gomez himself for personal or departmental reasons had initiated the said falsifications in an

136   extra legal way of attempting to rid Davis of its unwanteds.  Plaintiff did not receive a requested

137   "copy" of 04-4146, until August 28, 2006, and in the meantime plaintiff had been beset by many

138   intimidating threats to his life and liberty, and had on September 19, 2005, sent a group cease

139   and abate letter to the City, Coldiron,  Leigh, a Brian Odell, and a Cass Sylvia, a friend and

140   fellow of Wallace and one of the two coupled politicians, which in turn led to a city attorney,

141   apparently hired for the task from the private ranks of duly accredited court officers, doing up a

142   falsified report on October 4, 2005, which apparently would suggest to the keen eyes of other

143    duly accredited court officers that the falsifications were immaterial and that it was plaintiff's
144    purported mental imbalance with his juvenile need to rebel in the name of ideals against the
145    authority figures that had justified the police investigation by Gomez and three other officers, a
146    report presumably approved and actually signed by the interim chief or a signature machine
147    bearing the signatures of those whose signatures may be required by the courts and other
148    administrators in the name of justice, the elite, philistines and efficacy.

149         14. Meanwhile, plaintiff returned to Davis, still an innocent and wondering why Leigh
150    had not notified him of her response to his offer to do her up in his poetry as he had requested,
151    and the chase began. Plaintiff in retrospect reasonably suspects that Leigh was part of a criminal
152    operation involving medication and prostitution foisted on Cafe Roma by those associated with
153    Pine Tree Gardens, and or that Leigh was an innocent under control of the mental health
154    professionals of Pine Tree Gardens who saw plaintiff's adherence to pagan religious beliefs and
155    attempts to use the same to seduce Leigh as clear cut evidence of his, perhaps their mental
156    instability sufficient to require a careful investigation of plaintiff, i.e., prejudice generated against
157    a person of any kind of religion with ideas and beliefs repulsive and repugnant to the mental
158    health creed, their sense of soundness of mind and emotional well being, and or that Leigh was
159    in need of salvation of a different kind since Leigh had been rendered virtually helpless by that
160    sickness commonly experienced by those victimized by Eros in the name of love, and or that
161    Leigh, an overly pampered youthful beauty, had simply responded diva-like to being rejected by
162    the seeming sexual indifference of plaintiff and had connived her way into the position of
163    exacting retaliation by using that connivery associated with three year olds against rival siblings
164    or 5th graders against 5th grade rivals.

165         15. Indeed, on June 10, 2007, in the lobby of the main UCSB library she found plaintiff,
166    took on the look associated with that insanity of love, especially during late spring, then gathered
167    herself up and marched militantly past plaintiff into a distant hallway while leaving her
168    youthfully robust male companion to her rear. No pistol was fired, no lunges with a knife butt
169    much remains a mystery, but surrounding circumstances offer the hope of resolution of many of
170    the possible issues, legal and personal.

171         16. On September 17, 2005, Michele Pin at Pin's home told plaintiff that the police were

172   after him for stalking a young woman.  Later plaintiff was to find that Leigh had complained to
173   the police who were building a case against plaintiff for harassment under the criminal stalking
174   laws. While 04-4146 reports that Gomez got a tip from a redacted source or a letter by plaintiff
175   edited out by Gomez or Leigh and Coldon and went to Pin's, even though he had evidence in his
176   possession that plaintiff was in Berkeley preparing to fly to Costa Rica.  Pin, a local musician,
177   had connections with said Josh who had gotten his job at Cafe Roma after hiring Coldiron,
178   another Pin friend, as a singer for his, Josh's band.

179        17. Thereonafter at Cafe Roma twice, i.e., on two different occasions, said Odell expertly
180   led plaintiff to reasonably conclude that he was being set up for a malicious conviction as a sex
181   offender by Leigh and Coldiron and that several of those of the Cafe Roma community would
182   retaliate physically on behalf of Leigh based on their belief that plaintiff had been terrifying
183   Leigh with his letters.  Plaintiff at the time believed that Odell was as he pretended to be, a friend
184   warning plaintiff of pending doom.  04-4146, however, indicates that on September 21, 2005,
185   Leigh and Odell, a regular regular of Cafe Roma, had joined and were at one with Coldiron who
186   was leading the effort to oust plaintiff from Davis and rid Leigh of the physical presence of
187   plaintiff.

188        18. Plaintiff retreated to Pin's residence where he remained for two days before he
189   vacated Davis out of fear for his life and liberty. On September 18, 2005, the day before his
190   flight, plaintiff received information from a homeless friend that Wallace, who, according to
191   information provided by Sylvia, had been identified as one of those involved in seeking to punish
192   plaintiff because of his purported efforts to terrify Leigh.  This led plaintiff to reasonably
193   conclude that Wallace was abusing her position as a director of Pine Tree Gardens by trading
194   access to federal welfare and its benefits for sexual favors from homeless studs.  When plaintiff
195   sent his said cease and abate group letter to Coldiron and the others, plaintiff further enclosed a
196   note to Coldiron and said local politician, a Cass Sylvia, in attempting to alert them about
197   Wallace's alleged criminal conduct of soliciting victims for promoting prostitution.  Then
198   plaintiff fled for his life and liberty as previously stated.

199        19. According to 04-4146, Coldiron, apparently obedient to the suggestion by Officer
200   Gomez, contacted Gomez about said cease and abate letters and turned them over to him
201   unopened so that Gomez would then have opened copies not only of the cease and abate letter

202  but the be-aware-of-Wallace warning letter.  The cease and abate letters sent c/o Cafe Roma
203  formed the basis of Gomez' report of September 21, 2005.

204      20.  The copy of the cease and abate letter purportedly appears to have been construed by
205  the city attorney as plaintiff's response to the falsified reports attributed to Leigh and Coldiron.
206  In the letter, plaintiff sought to show that he had ample reason to believe that Leigh would have
207  been open to his said offer and thus, convincingly, in that part of his letter to Leigh, he reminded
208  Leigh while letting the others know  of how in following him about downtown Davis during late
209  Spring. 2004, she had shown up guiding her group of patients and seeing plaintiff had become
210  flushed and behaved very much like a woman smitten with love. Elsewhere in said letter plaintiff
211  had threatened to sue those responsible and went so far as to suggest that Leigh had been led
212  astray by others, especially Coldiron, into seeking to prosecute plaintiff for responding naturally
213  if not sexually to her flirtatious conduct.

214      21.  04-4146 discloses that on October 4, 2005, the then interim chief made the City's
215  response, concealing material evidence corruptly in attacking plaintiff's credibility, apparently
216  the City's way of defending against future possible lawsuits and probably intentionally the signal
217  to judges to help the city save money which is to say if not a conspiracy per se becomes a de
218  facto conspiracy to keep the lawyerless at bay.  In early September, 2007, the private attorney
219  who had been hired by the City to deal with the matter, claimed responsibility for the report
220  attributed to the interim chief, as well as for the police refusal to provide information about
221  Wallace in response to plaintiff's  lawful requests under the state's transparency law, the same
222  law that permitted the said redaction, a redaction that appeared to go beyond the bounds of
223  propriety and had been done in a haphazard manner as though she, the city attorney and an
224  officer of the court, was building a defense of  negligence by one of the overly burdened in the
225  overly hurried pace of stressful times.

226      22.  Plaintiff returned to file suit as promised, but as he was about to do so, he was
227  confronted on June 5, 2006, by Wallace, Coldiron and Coldiron's assistant manager, an Andrew,
228  in front of Cafe Roma. Wallace appeared to be in a rage which she led plaintiff to attribute to the
229  "fact" that the police had, in raiding her place and finding nothing, informed her that it was tattle
230  tale plaintiff's information to the FBI that had led to the raid.  Wallace went on to threaten to

231     unleash upon plaintiff the retaliation of those about the Cafe Roma and the police that still
232     supposedly held a grudge against plaintiff for his purported sexual harassment and terrorizing of
233     Leigh. Plaintiff sought to and would have made peace but for what he saw as Wallace's attempt
234     to bully him with her brazenly boasted of political clout. Plaintiff retreated to the outskirts from
235     his regular downtown havens, sought more information about Wallace, becameincreasingly
236     intimidated, then retreated to Berkeley, returning only to get a copy of 04-4146 on August 28,
237     2006.

238          23. Wallace, plaintiff now concludes, actually sought to shake plaintiff up so that he
239     would inform her of the identity of the man who had given him the information which led to the
240     conclusion that he sent to the FBI. Plaintiff provided Wallace with the man's name at which
241     point Wallace and Coldiron exchanged that brief tell tale look of, " aha! it was as we surmised; it
242     was him." In fact, it appears that Wallace and presumably Coldiron were providing welfare
243     benefits to male studs in return for their availability to provide sexual favors. They were, in
244     other words, converting the most vulnerable into prostitutes. Later plaintiff was approached by
245     someone, a studly formerly homeless male, a man very adept with the women, a man who made
246     Coldiron publicly gush, a man who for no discernible reason began to relate to plaintiff the tale
247     of why he deserved to be on welfare. In fact, he appears to have been sent to attempt to quiet
248     plaintiff's suspicions relating to Wallace and Coldiron's abuse of their positions by cheating on
249     welfare as part of a prostitution scheme, access for access.

250          24. The man, a Shane, whose information led to the said FBI letter, later – about July 1,
251     2006 -- took plaintiff on a tour of the man's new found living arrangements provided by Wallace
252     in the enclave of Pine Tree Gardens at 212 I Street. He was living in a trailer he said Wallace
253     had given him,  He was openly dealing in medication at the second Cafe Roma, the one called
254     "A Street Roma," the type of medication apparently used to pacify mental health patients getting
255     government funded  help from Pine Tree Gardens.  Later after plaintiff related the matter to said
256     politician, Wallace, according to the word, threatened the man with police or other retaliation,
257     who, next heard, had escaped Wallace's wrath and was in Phoenix. And the wrath of the street
258     came down on plaintiff the alleged destroyer of a drug supplier.

259          25. Plaintiff filed, amended and dismissed his first civil rights action since he wanted the

260   ability to secure evidence and at the same time, as he subsequently found, his federal civil rights

261   suit was frivolous, negligence by police investigators not deemed repulsive to the constitution.

262       26. Once Plaintiff got the censored records of 04-4146, discovered the existence of

263   evidence that would carry his suit, filed several separate suits, received additional information

264   from the police, but was stopped by the December 1, 2006, dismissal of that suit against

265   Coldiron and Wallace. It was the first part of the dismissal process which appeared to be

266   cranked out by a machine used to reduce the load of bothersome pro se actions. To the

267   machine's decision was appended an order to declare under penalty of perjury the truth of his

268   allegations and not to cite any authorities thereafter except for the specific code that gives the

269   court jurisdiction. Just recently plaintiff found that he had been deceived by whoever appended

270   said assertion, that the cases read to require plaintiffs to set out such authorities in their

271   complaints so as to give adverse parties proper notice.

272       27. On or about June 10, 2007, there was the incident in Santa Barbara relating to the

273   apparent intimidating threat of Leigh and her burly male companion.

274       28. On December 20, 2007, outside AMTRAK, Davis, while plaintiff's fee waiver

275   application under 28 USCA section 1915 pended, Odell informed plaintiff that Leigh and

276   Coldiron would testify against plaintiff to the effect that they didn't know they knew plaintiff

277   when making their complaints to the police. Gomez' report states he on July 19, 2004 showed

278   Leigh plaintiff's photo and the subsequent report appears to suggest that Coldiron on March 28,

279   2005, had been provided a photo of plaintiff, although it could have been that Gomez was setting

280   up a future defense and had not shown the photo to Leigh which wouldn't have been necessary

281   had he known she knew plaintiff, or knowing that the matter was being subjected to a "fix"

282   which would simply require a "padding" of the record so that it appeared that everything was in

283   order to fool whoever exercises the casual method used by the sleep prone to control the police

284   and other authority figures in what laughingly or mockingly is supposed to be factual cross

285   checking.

286       29. Such a defense was reiterated by David Young February 12, 2008, or thirty days

287   before final judgment by the feds. Young claimed that Josh, the musician friend of Pin, then the

288  former counter worker for the then old Cafe Roma and then subsequently a professional

289  nightclub bouncer, had mistaken Young for plaintiff and was about to attack him physically for

290  terrorizing Leigh with poetry.  And thus the threat to plaintiff's life was renewed in the context of

291  sustaining the proposed perjury of Leigh and Coldiron.

292      30.  There were other threats but more in the form of dirty looks by Wallace, Young, and

293  two others whose name plaintiff cannot recall – one a reputed "firebug" and another, a very

294  handsome man, a musician who reputedly went over the edge from his inability to ingest street

295  drugs who had become terrified at sight of plaintiff as though from fear of plaintiff's occult

296  powers that he apparently was able to see through Leigh's purported divinely penetrating eyes,

297  but the unmistakable threats, intimidation and coercion were to come from the district court in

298  the form of threats subtly disguised in an order or not so subtle threat to tax plaintiff with civil

299  penalties should he continue to pursue his claims against Wallace and Coldiron, threats that had

300  by their very nature continued through to the summer of 2011 with the aforementioned

301  withdrawal of plaintiff's right to gain access to the federal courts apparently because he sought

302  and pushed for that quaint notion of justice in a world subdued by the vying for and adulation of

303  power.  Plaintiff's documented December, 2007, objections to the obvious corrupt falsification of

304  that court's records were amplified by being edited out of existence by the deputies' or whoever's

305  trashing out of petitions, complaints and motions they didn't like in confirming the reality of

306  what otherwise might be dismissed as plaintiff's paranoid fears about the state of what is

307  laughingly and mockingly called justice.  And plaintiff, granted IFP status was unlawfully,

308  corruptly  and maliciously prevented from making appeal purportedly because he hadn't put up

309  the fees required in making such an appeal.   The king is returned.

310          FIRST CAUSE OF ACTION: CIVIL STALKING CC SECTION 1708.7

311      31.  Plaintiff repeats the foregoing allegation in their entirety.

312      32.  Defendants are jointly liable to plaintiff for the tort of stalking in that defendants

313  through the above mentioned individuals engaged in a pattern of conduct the intent of which was

314  to follow, alarm or harass plaintiff.  As a result of that pattern of conduct, plaintiff reasonably

315  feared for his safety in that defendants as part of that pattern of conduct made credible threats

316   with the intent to place plaintiff in reasonable fear for his safety, and at least on one occasion,

317   plaintiff clearly and definitely demanded that defendants cease and abate their pattern of conduct

318   and the defendants persisted in their pattern of conduct.  Said pattern of conduct was not

319   constitutionally protected activity nor was there legitimate reason to justify their pattern of

320   conduct although under state law Leigh and Coldiron are absolutely immune for their criminal

321   conduct in providing falsified information appearing in 04-4146.

322      33.  Plaintiff suffered intense and lasting emotional distress as a natural and direct

323   consequence of the aforementioned pattern of conduct.

324            SECOND CAUSE OF ACTION ARISING UNDER CC SECTION 51.7

325      34.  Plaintiff repeats the foregoing allegation in their entirety to show a cause of action

326   under CC section 51.7 as supplemented by subsections (b) and (e) of section 50.

327      35.  Defendants through the above mentioned co conspirators deprived plaintiff of his

328   right to remain free from intimidating threats against his person or property because of his

329   innocent religious practices or the perception of his innocent religious practices.

330      36.  Under subsection (b) of section 52 and subsection (b)(1) of section 52 defendants are

331   liable to plaintiff for the actual damages of  the said mental/ emotional distress and exemplary

332   damages in addition to the punitive damages required by section 1708(c).

333      37.  Under subsection (b)(2) of  section 52 each defendant is liable to plaintiff for a civil

334   penalty of  $25,000 for each use of intimidating threat against his person or property to deny

335   plaintiff  the right secured by section 51.7 or else assisted, incited or conspired to effect each said

336   denial, including the three acts of September 17, the act of June 5, 2006, the act of August 28,

337   2006, the act of June 10, 2007, the act of December 20, 2007, the act of February 12, 2008 as

338   well as the acts of those of the district court of December 1, 2006, by or in the name of

339   magistrate judge Moeller, December 20, 2007, and January 15, 2008, by or in the name of

340   magistrate judge Hollows, the act of the article three judge on March 13, 2008, and the two acts

341   that prevented plaintiff from gaining access to the Seattle district court and the 9th circuit in San

342   Francisco during the summer of 2011.  Altogether, each defendant who is liable under said

343    subsection (b)(2) is liable to plaintiff for up to 14 such denials or $350,000 in penalties.

344        38.  Plaintiff did not make such specific claims for penalties in the district court but they
345    were there within his pro se allegations and he would have had he been given the opportunity to
346    appear in open court flanked by officers of the court who would have been dutibound to instruct
347    the court on behalf of justice but magistrate judge Hollows had intentionally confused,
348    befuddled, belittled and connived plaintiff in his extra judicial efforts to salvage the reputations
349    of Coldiron and Wallace and save their criminal operation from discovery in putting the fix into
350    effect, an allegation that plaintiff, given the opportunity, will prove.

351        THIRD CAUSE OF ACTION ARISING UNDER CC SECTION 52.1

352        39.  Plaintiff repeats the allegations of the previous causes including the allegations of
353    damages and penalties under section 52.

354        40.  Defendant denied plaintiff the rights secured by section 52.1(b) when they used
355    threat, intimidation or coercion in an attempt to prevent plaintiff from exercising rights secured
356    by the constitution and laws of the United States and State of California, including the right to
357    petition, to due process and to equal protection, the rights inherent in sections 1708.7 and 51. 7

358        41.  The damages and penalties for which defendant are liable are in addition to the
359    damages and penalties for which they are liable under the other sections set out above.

360        **Wherefore** plaintiff asks the Court

361        (a) For an award of compensative, actual, exemplary and punitive damages jointly from
362    defendants,

363        (b) Mandatory penalties of $700,000 from each defendant,

364        (c)  Attorney's fees, actual and court costs, whatever else is meet and proper

365        (d)  and a trial by jury on all issues.

366        (e) Or in the alternative to grant plaintiff leave to amend by adding claims under 42

367   section 1985(2)(first part) for obstruction of justice and section 1983 for deprivation of right not

368   to be denied access to the courts.

369       Dated: _____ Jay L. Sellers _____

370

371

372

373

374

375

376

377

378

379

380

381

382

383

384

385

386

387

388

389

390

391

1   Jay L. Sellers
2   417 Mace # J 253
3   Davis CA 95618

**ORIGINAL**
4
5   **FILED**

6                                                   **DEC 2 9 2011**

7                                   **CLERK, U.S. DISTRICT COURT
                                    EASTERN DISTRICT OF CALIFORNIA**
                                    BY _____
8                                              DEPUTY CLERK

9

10              UNITED STATES DISTRICT COURT

11              EASTERN DISTRICT OF CALIFORNIA

12   ---------------------------------------------------------

13   JAY L. SELLERS,                      CASE #

14              Plaintiff,                2:11 CV 3402 GEB EFB (CPS)

15        V                              CIVIL COMPLAINT + EXHIBIT

16   UNITED STATES, CLERK VICTORIA MINOR,

17   MAGISTRATE JUDGE MOELLER AND

18   MAGISTRATE JUDGE HOLLOWS OF

19   UNITED STATES DISTRICT COURT FOR

20   THE EASTERN DISTRICT CALIFORNIA,

21              Defendants.

22   ---------------------------------------------------------------------------------------

23        1. This action seeks the removal of the force of a judgment obtained by fraud

24   perpetrated upon the federal district court sitting in Sacramento wherein "judgment" issued

25   on about March 13, 2008, affirming a magistrate judge's dismissal of plaintiff's meritorious

26   state and federal claims with prejudice. Plaintiff, appearing without an attorney,

27   subsequently repeatedly sought relief from the circuit court in San Francisco as well as with

28   FRCP 60(b) motions and independent actions all of which were diverted into the building of

29   a case to "show" (sic) that plaintiff was but a disgruntled loser, a mental case undeserving of

COMPLAINT OF 1,736 words and 8,831 characters                    Page 1

30   respect or credibility, one who should be utterly ignored, set aside as an irrelevant human
31   being or trashed as just another left over hippy lost in his drool, and thus deservedly left
32   floundering, fit to be belittled, a confused rot in the harbor of his own beliefs, which beliefs in
33   fact were very reasonably based -- that this court, the federal judiciary and the United States
34   government itself reaps of its own corruption and not only suffers but foments the treasonous
35   conduct that seeks the undermining of the federal constitution, and the inalienable rights of
36   the individual as found but now founders in the bill of rights. Jurisdiction comes under 28
37   USC sections 1331 and or 1346. Crimes aside, the misconduct or evil conduct grossly defies
38   the Constitution's right to petition clause, Amendment I; right not to be deprived of property
39   without due process of law, Amendment V; nor to have property taken for public use,
40   without just compensation Amendment V; as well as the enforcement clause of Section 5,
41   Amendment IV which gave us 42 USC section 1983, and conspiracy to subduce the federal
42   courts of subsection (2), part one, and the enforcement clause of subsection (3) of Section
43   1985.

44       2. On January 3, 2011, plaintiff received notice from the office of the clerk of this
45   court that the court corruptly falsified its records with the help of a hand manipulated dating
46   machine which was used to manipulate dates to "show" falsely that plaintiff had "filed" an
47   amended complaint during early summer, 2006, **after** dismissing his initial pro se attempt to
48   invoke federal jurisdiction based on negligent police conduct. The complaint was frivolous,
49   plaintiff came to know of it and moved to dismiss. Later, he received police records to show
50   that there had been a conspiracy whence flowed his personal and constitutional injuries. Case
51   #04-4146, City of Davis Police Department.

52       3. Had plaintiff had the advice of a competent consul, he would not have "filed " his
53   case, but would have waited until he had obtained evidence of such a conspiracy. Moreover,
54   plaintiff would have made a series of state claims under CC section 52(b)(2) for conduct
55   repulsive to sections 51.7 and 52.1 for a series of intimidating threats because of religious
56   bias and would not have bothered this court with what could have been resolved at the state
57   level, but then there would have been no reason for the court to bitch and moan its way to
58   further increase its funding because of getting swamped by frivolous victim complaints by
59   prisoners and other poor malcontents, this court apparently having a hidden reason and
60   purpose behind its constitutionally revolting decisions other than seeking more golf and fanny
61   pinching time.

62       4. During midsummer, 2011, plaintiff received a listing of the ten cases supposedly

63   filed in the district court from a deputy with a mocking hand written note which implied that
64   the supposedly mentally imbalanced plaintiff couldn't bear losing his case and had kept on
65   harassing his or her court with frivolous and maliciously convoluted claims. The deception
66   apparently in seeking to take effect did not however work. Included in the list were supposed
67   claims not intended to be claims in an obvious attempt to pad the record to further some half
68   baked theory, but more importantly were the action and responses that had been sent in but
69   were not set in the files of the court. Yes, the deputy or perhaps someone else had taken to
70   edit out what he or she or they didn't want to appear in the court record of plaintiff's cases.
71   Included, was an action plaintiff sought to lodge against Victoria Minor, then court clerk
72   which had sought the relief that follows.

73        5. On December 20, 2007, Hollows, the apparently criminally induced magistrate
74   judge who through the bribery of a RICO operation referred to above, in initially dismissing
75   plaintiff's complaint attacked plaintiff viciously and aggressively in seeking to discredit
76   plaintiff, an attack that began with the mocking gibe relating to the supposed dismissal
77   followed by the amended complaint. Proof, according to Hollows, that plaintiff was some
78   half cocked left over hippy from the sixties now overly Freudianized with age who had
79   sought to latch onto a young cafe chic in an engagement of the frivolous infatuation of a
80   senior. Every finding except that which had to do with jurisdiction was utterly a figment of
81   someone's imagination or an imaginative exaggeration of the actual facts. The easiest
82   falsification for plaintiff to attack was the fraudulently falsified court records which came in
83   the form of an original action against clerk Minor based on her failure to exact discipline
84   upon her ranks of revolting deputies or her actual participation in a "fix." It was reasonable
85   to believe that this case would be brought to Hollows' and others' attention but its vehicle –
86   said complaint -- was trashed, i.e., flushed down the toilet or whatever serves as a depository
87   for this unforeseen article 3 creation.

88        6. On December 1, 2006, magistrate judge Moeller reportedly dismissed plaintiff's
89   complaint against two defendants who, it turns out, were operating a highly questionable way
90   of inducing the homeless to enrich the coffers of a halfway house. The dismissal order came
91   across as something hatched out of a machine to be signed by an electronic signature stamp.
92   It had nothing to do with the case which alleged that plaintiff had been subjected to the
93   retaliatory efforts of the couple because he had reported them to the FBI. The canned order
94   was apparently something that resulted by plugging personalized information, e.g., name and
95   social status, into a pre programmed computer that cranked out the first of several such orders

96    on the way to dismissing a complaint with prejudice, i.e., it was the unexamined lie that
97    would not and was never intended to reach the eyes of an honest judicial official (sic).
98    Plaintiff withdrew after wittily letting flow his reasonably based suspicions, specifically
99    accusing the court of defrauding its pro se litigants through the acts of an immunized
100   signature machine. Nor did this timely response make the case record which invites the
101   reasonable conclusion that the in-taking deputy took on the task of editing out what was
102   deemed unfit for padding the eyes of a judicial official.

103         7. Plaintiff who had naively believed that the court was beyond reproach when it
104   came to its own records, in utter disgust, defiantly destroyed his copies or the records
105   themselves which had not been destroyed by flood or deluge. This occurred every time
106   plaintiff threw his arms into the air, gave the gods of modern justice a two fingered salute and
107   returned to his ultimate love, the poetry of Pindar and ancient myths relating to the origins of
108   justice.

109         8. Plaintiff needs a legal counsel to be by his side to let him know what he can and
110   cannot do since the court appears unwilling to do anything that might encroach upon the turf
111   of the medieval-type guild that controls lawyers, including doing what under other
112   circumstances would be forbidden by 42 USC section 1986, i.e., aiding and abetting a RICO
113   enterprise's operation. Without such a counsel, the court deprived plaintiff of his right to
114   petition the court, to due process in processing his claims, to equal protection of state law
115   since others similarly situated who can and do hire an attorney will be so permitted.

116         9. Plaintiff further needs this case processed and decided by people not associated
117   with the court or any court in this circuit where plaintiff's allegations of systemic corruption
118   will most likely ignite a prejudice and bias in the minds and therefore convolute the judgment
119   of those associated with this or any court within the circuit.

120         10. For the question is not so much why a magistrate judge would knowingly
121   corruptly and maliciously criminally use corruptly falsified records, but why two individuals,
122   socially related to plaintiff, knowingly and intentionally criminally helped falsify material
123   information in police reports with the knowledge that their falsification would be detected.
124   The question of who they knew who had offered to protect them invites the answer that the
125   fix was in and had always been in, and that, further, the connection latches on to this court
126   and that this court in and of itself seethes in corruption so that this house houses an aberration
127   which in the name of justice, Dika, the daughter of Zeus, undermines the constitution and
128   laws of the United States. As was well said ages ago, this is more than mere mockery, this is

129     a crime, and the crime is against humanity.

130

131     WHEREFORE plaintiff asks the court to dissipate and render innocuous whatever

132     force any decision and judgment against plaintiff of this court exists and to permit plaintiff to

133     enter a complaint with federal and state civil rights claims. Plaintiff further asks the court to

134     appoint plaintiff legal counsel so that plaintiff might actually obtain meaningful access as

135     required by the mandates of the federal constitution notwithstanding any enactment by the

136     Congress. Plaintiff also asks for people of another circuit to process and decide this case.

137     Plaintiff asks for whatever else may be seemly, fit, meet, or appropriate and for all issues to

138     be tried by jury.

139

140     DATED _____   JAY L. SELLERS _____

141                                EXHIBIT

142     This poem is illustrative of plaintiff's criminal stalking of innocence. It was done in

143     Hawaii or Goleta during Spring, 2005, or 2006.

144

145                     *A pillow propped rise*

146                       *now let us meet*

147                     *feathery soft beneath*

148                     *the savor of bronzed*

149                    *wire thin as angel hair*

150                     *and O so deadly.*

151

392

393                                    A Poem

394

395                              Were I the sea,

396                              you would now

397                           be bathed so completely,

398                        so covered with brine, that you would

399                        burst like a gold coin before the sun,

400                              and were you earth

401                        and I heaven, you would now

402                                be covered

403                              so thoroughly

404                           with liquification

405                     that I would permeate your deepest depths,

406        then turn about and suck me out from your every pore and transcend

407                        forever my treasure-hungering soul.

408                     But I am not heaven and you are not earth.

409                     We, the two of us, are, you and I, human

410                           and stand terrorized

411                           before this wildest

412                        of seas, just two alone among

413                              those billions.

414                              But, if, through

415                           these words, we, the two

416                                of us, can become

417                    that one, maybe, just maybe, we can know

418                                the power of heaven

419                                and earth and become

420                          that sea that, being pacified,

421                                brightly shines, and

422                                come into being

423                                absorbed by

424                                our immortality.

425                                        *

426

427

428

429    Dated: 1 – 13 – 12 _____ Jay L. Sellers _____

430